On Rehearing.
(May 11, 1903.)
BLANCHARD, J.
The case is this:—
J. W. Smith, husband of Margaret Smith and father of plaintiffs, owed D. A. Breard five hundred and seventy-five dollars. He gave Breard a mortgage on a certain lot of ground to secure the debt. This was in the year 1874.
The indebtedness not having been paid, Breard sued out a writ of seizure and sale in foreclosure of the mortgage. This was in 1SS6. At that time the present plaintiffs were all minors.
The property was sold under the writ and Breard became the purchaser for the price of $766.66, which, presumably, represented the amount then due him, with interest and costs of suit.
No deed or act of sale from the sheriff to Breard, of this property, appears in the transcript, though it is supposed one was executed and placed of record, for the note of evidence recites that there was offered in evidence a certified copy of the deed from McGuire, sheriff, to Breard.
While Breard thus acquired title to the property in October 1886, and while the legal title to the same remained of record in him from that time forth, he never took possession of the property. It was at the time of its seizure under his mortgage the home of *562 J. W. Smith and his family. Smith’s actual possession was never divested. The property remained in his possession from the time of Breard’s purchase down to the present time, and has been ail these years and still is his home and place of residence.
It appears that in December 1887, something over a year subsequent to Breard’s purchase at sheriff’s sale, Smith paid Breard $903.27, which was the exact amount, principal, interest and costs then due Breard on the old debt. It also appears that at the time of such payment an act of sale was drawn up which recited that Breard sold the property to “Richard Henry, Mary Ellen, John Edward and Margaret Elizabeth Smith, minor heirs of James W. and Margaret Smith, deceased, represented by their father James W. Smith, present accepting this sale for said minor children,” and that the sale was made for the price and sum of $903.27 in cash, being the amount in full of the principal of the judgment that Breard had recovered against J. W. Smith, together with interest thereon to that date, and all costs of suit, including taxes paid — “which said sum,” is the further recitation of the deed, “is paid by the said J. W. Smith for the use and benefit of said purchasers, his children aforesaid.”
This deed was never exeeuied. It seems to have remained among Breard’s papers until unearthed to be offered in evidence in the instant ease, more than a dozen years later.
Its reception in evidence was objected to and a bill reserved to the ruling of the court admitting it.
It was admissible to show rem ipsam and, taken in connection with Breard’s testimony, to show that such a document was drawn up and handed to him at that time. But it was not admissible to prove its recitals, nor do we understand it was received for the latter purpose.
While the title thus remained of record in Breard for fourteen years, the property was not assessed for taxes in his name and he has never paid any taxes on it.
J. W. Smith, the father of plaintiffs, caused it to be assessed to “The Heirs of J. W. and‘Mrs. M. Smith,” and he (J. W. Smith) has paid the taxes.
Matters continued thus until the year 1900, when a judgment for $1130.50 was recovered by the Racine Wagon and Carriage Company against J. W. Smith.
The attorney for the Wagon Company, shortly after recovering the judgment, apprised Breard of the fact that the title to. the property stood in his name. Whereupon Breard informed him that he had no interest in it; that he had been paid what was due him on the property.
Then it was that a writ of fieri facias issued on the judgment and under this writ the property was seized as the property of J. W. Smith, the judgment debtor.
This was met by the present suit, brought by Richard H. Smith, Mrs. Mary Dooner (née Mary Ellen Smith), John E. Smith and Margaret Smith, alleging themselves to be the owners of the property and enjoining its sale.
These parties are the children of J. W. Smith, the youngest of whom had meanwhile become of the full age of majority.
A few days before filing their suit, but subsequent to the seizure of the property under the Wagon Company’s judgment, Breard executed an act of sale of the property to the parlies plaintiff.
No one signed this deed except Breard, the notary and the witnesses. There was no acceptance of the act.
The act recites that Breard had bargained, sold and delivered the property to the parties named as vendees in December 1887, and had, at that time, received from them $903.27 as its price, but the title having still remained in him, he now appeared for the purpose of transferring the formal title to" them.
When this deed was offered in evidence it was objected to on the ground of its having been executed and recorded subsequent to the seizure made of the property by the defendant in injunction and while the property was in the custody of the sheriff. To an adverse ruling counsel for the seizing creditor reserved a bill.
The objection went, mainly, to the effect to be given to the deed as documentary evidence in the case. It was properly received in evidence, but not to prove any of the facts alleged in it, other than those reciting a divestiture by Breard of the legal title to the property that had stood in himself, and its investiture in plaintiffs, as far as Breard could do so.
*564 • The answer of the seizing creditor to the petition for injunction sets up the fictitious and simulated character of the claim of ownership asserted by plaintiffs and avers the same to have been made for the purpose of screening the property from the pursuit of the creditors of J. W. Smith.
The question in the case is whether the property is to be considered as belonging to J. W. Smith, at the time of its seizure under the Wagon Company’s judgment, or as belonging to the plaintiffs in injunction.
The district judge held against plaintiffs on this issue and the former opinion and decree of this court sustained him.
A rehearing having been granted, a reconsideration of the case has not led to the conviction that there should be a different result reached on the case as presented in the record.
But in the interests of justice, and to give both parties the opportunity for the introduction of further evidence, we have concluded to remand the cause.
J. W. Smith claims to have used his children’s money in paying the Breard judgment and says he derived the funds so used from the sale of lands in Texas which his father —their grandfather — had bequeathed to them, tie says he went to Texas and sold these lands. But he was not their tutor — had never qualified as such in Louisiana. How, then, could he, without authority from the court of the domicile of his children, showing his legal capacity to represent -them, sell lands belonging to them in Texas? Who would buy such a title? Where was this sale made and to whom; what land was sold, and how much derived from its sale — are questions the record does not satisfactorily and sufficiently answer.
How did his children acquire these lands? Smith says by the will of their grandfather, but no will or copy of will was offered in evidence; no evidence of any probate of a will in Texas was shown; no record of mortuary proceedings of the grandfather’s succession in Texas was produced.
Where in Texas did this grandfather live and die; what steps were taken to open his succession there and administer his estate; what recognition of the heirship of the plaintiffs under the will and of their ownership of lands alleged to have been bequeathed to them was made by the courts of Texas? All these are. pertinent questions and should be satisfactorily answered, by plaintiffs in injunction by the production of legal and competent evidence.
Why was it that these plaintiffs, the eldest of whom was 33 and the youngest 23 years old when this litigation commenced, have never asserted the property to have been theirs until seized under the Wagon Company’s judgment?
All of them have lived since their majority in the town where the property is situated, without laying claim to ownership of the property, so far as the record discloses. If the property were theirs, if. would seem they must have known it, and must have had knowledge of how and where and when they derived the means by which it was acquired for them.
Yet not one of them went on the stand as a witness in the case.
The case as to their ownership of the funds paid to Breard, and their ownership of the property in question, rests on the, practically, uncorroborated testimony of ,T. W. Smith, their father, who is the seized and insolvent debtor of the defendant in injunction. '
What authority had J. W. Smith, supposing he had in hand funds belonging to his children, to invest the same in the property in question? Even if he were tutor he could not make such investment without legal authority.
Civ. Code, art. 353, is plain and precise on this. The tutor, it says, cannot purchase for the minor immovable property without authority from the judge, granted on the advice of a family meeting. And the jurisprudence is that such a purchase without authority is at the tutor's risk. Succession of Mitchell, 33 La. Ann. 353.
But conceding that this father without being their tutor and without authority, having funds of his minor children, could invest the same in property so as to place the title in them, was there any ratification of this by them after their majority and before the seizure of the property by defendants in injunction, in such way as to make the property theirs and, thus, relieve him of its be *566 ing held at his risk? And if there were no such ratification what is the effect of its absence on the title to the property?
These are questions for argument, supposing the evidence to eventually suffice to show that the funds paid Breard were moneys actually belonging to the plaintiffs in injunction.
Plaintiffs sought to elicit from Breard, as a witness on their behalf, what J. W. Smith said to him in 1887 when he paid him the amount of his indebtedness to him, as to the source from which he obtained the money with which the payment was made. On objection that it was hearsay and a self-serving declaration, this was ruled out and a bill taken.
Whatever statements Smith made to Breard at the time referred to, being at a time not suspicious, are hardly to be classed as self-serving, nor do we think them inadmissible as hearsay, on the authority of 1 Greenleaf on Evi. § 108; Brown v. Stroud, 34 La. Ann. 374. Smith is, himself, living and was a witness for plaintiffs in the case. His statement to Breard in 1887 can have no greater force than his testimony now, except in the one particular that he then spoke at a time not suspicious.
Defendants offered in evidence a letter written by J. W. Smith in December, 1900, to them in which he undertook to give a statement of his financial condition. He stated he owned free from incumbrance twelve thousand dollars worth of real estate, not including his homestead, which is the property in question.
The letter as evidence in the case was objected to by plaintiffs and ruled out and bill taken.
Defendant complains of this ruling.
The letter should have been admitted. The answer charged the title asserted by plaintiffs to be fictitious and simulated, and the letter, containing a reference to the property in dispute and a statement that it was his, was competent evidence, as far as it went, in the effort on defendant’s part to establish simulation.
It was, too, admissible on another ground. Smith testified the property was that of his children and that their ownership dated as far back as 1887. Yet here was his letter in 1900 asserting it to be his. The letter, therefore, was competent in rebuttal of his testimony and to weaken its force.
Bor the reasons assigned it is ordered that the judgment appealed from be set aside, and this cause be remanded to the court a qua for further proceedings according to the slews herein expressed — all costs of suit to await final determination and to be paid by the party then east.